**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| KIMBERLY MARTINEZ-RIVERA,<br>**Plaintiff,**<br>v.<br>ROSAMAR TRUJILLO-PLUMEY, ET AL.,<br>**Defendants.** | **CIVIL NO. 26-1102 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendants Rosamar Trujillo-Plumey ("Mayor Trujillo-Plumey"), Orlando Cintrón-Negrón ("Cintrón-Negrón"); Yojaris Cruz-Castro ("Cruz-Castro"); Rose Nieves-Ruiz ("Nieves-Ruiz"); Edwin López-Nieves ("López-Nieves"); Izael O. Santiago ("Santiago"); Luis Matos ("Matos"); and Antonia Morales-Concepción's ("Morales-Concepción"), collectively "Defendants," *Partial Motion to Dismiss* (the "*Motion* to Dismiss") and *Supplemental Partial Motion to Dismiss* (the "*Supplemental Motion*"). (Docket Nos. 8 and 9). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the *Motion to Dismiss*; and **GRANTS** the *Supplemental Motion.* This action will go forward as to Plaintiff's political discrimination claims under the First Amendment to the United States Constitution.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Kimberly Martínez-Rivera ("Plaintiff" or "Martínez") was a public employee and Director of the Head Start Program (the "Program") in the Municipality of Humacao (the "Municipality"). (Docket No. 1 ¶¶ 1, 30). The Program, which provides early childhood education, health, nutrition, and parent involvement services to low-income families and their children, functions under the Department of Health and Human Services of the United States ("HHS"). Id. ¶ 26. The Program is funded by the HHS and administered by the participating local government unit, here the Municipality. Id. In the Municipality, the Governing Council of the Program is composed of members of the Municipal Legislature. Id. ¶ 27.

Plaintiff alleges that she is affiliated with the New Progressive Party ("NPP") and that this was known amongst municipal employees because of her political activism, campaigning, work in support of the NPP Mayor Julio Geigel-Perez, and service as a polling station official representing the NPP on multiple occasions. Id. ¶¶ 3, 22. On November 5, 2024, Puerto Rico held general elections which resulted in a narrow victory for the Popular Democratic Party ("PDP") in the Municipality whereby Mayor Trujillo-Plumey was elected. Id. ¶ 22-24. Plaintiff claims a discriminatory environment against her began as early as December 17, 2024, during the transition process. Id. ¶ 33. On May 30, 2025,

Plaintiff received a letter signed by Mayor Trujillo-Plumey informing her that her employment would not be renewed effective May 31, 2025. Id. ¶ 49.

On February 20, 2026, Plaintiff filed a *Complaint* against alleging that Defendants violated: (1) her First Amendment rights under the Constitution of the United States because her protected political activities were a motivating factor for the adverse employment action; (2) her due process rights by terminating her employment without notice, cause, or the opportunity to be heard; (3) Plaintiff's rights secured by Article II, Sections 1, 2, 4, 6 and 7 of the Puerto Rico Constitution; and (4) Puerto Rico's Public Service Personnel laws; Law No. 131 of May 13, 1943, P.R. Laws Ann., Tit. 1, § 13-19; Puerto Rico's Local Law 100; and Articles 1802 and 1803 of the Civil Code, § 5141-5142 of Title 31. Id. ¶¶ 50-63. Accordingly, Plaintiff seeks reinstatement, damages, and punitive damages. Id. ¶ 67.

On April 28, 2026, Defendants filed their *Motion to Dismiss*. (Docket No. 8). Although Defendants contend that no discrimination occurred, they concede that Plaintiff's political discrimination pursuant to the United States Constitution and Sections 1 and 4 of the Puerto Rico Constitution cannot be dismissed at this juncture. Id. at 6. Conversely, Defendants assert that most of Plaintiff's

remaining claims should be dismissed.[1] Id. First, Defendants maintain that Plaintiff's due process claims must be dismissed because Plaintiff did not have an identified property right over her position in the Head Start program because she was appointed for a fixed term, making her a transitory employee. Id. at 4-5. Second, Defendants argue that Plaintiff's claims under Sections 2, 6, and 7 of the Puerto Rico Constitution must be dismissed because they are inapposite to Plaintiff's allegations and not properly pled. Id. at 7-8. Third, Defendants contend that Plaintiff seeks relief under "Puerto Rico's Public Service Personnel laws" despite the fact that the Public Personnel Act has not applied to municipal employees since 1991 when the Autonomous Municipalities Act, 21 P.R. Laws Ann. § 4001, et seq., was enacted. Id. at 8. Fourth, Defendants similarly posit that Puerto Rico Law 100 does not apply to municipalities and consequently municipal employees. Id. Fifth, Defendants aver that Plaintiff failed to adequately plead her claim for punitive damages and, even if the Court were to disagree, the Municipality and its official-capacity defendants are immune from punitive damages in Section 1983 cases. Id. at 9-10. Sixth, Defendants argue that Plaintiff failed to adequately plead a claim against Matos, a municipal contractor, who is not a state actor as

[1] Defendants note that Plaintiff seeks relief under the Puerto Rico General Tort Statute by citing Articles 1802 and 1803 of the Puerto Rico Civil Code, both of which were repealed in 2020. Defendants do not seek dismissal given that the essence of these articles remain in effect in the 2020 Puerto Rico Civil Code.

required by Section 1983. Id. at 10-11. Seventh, Defendants allege that Plaintiff failed to plead that most co-defendants possessed legal authority to influence or otherwise partake in the decision to not renew Plaintiff's appointment. Id. at 12-16. On April 29, 2026, Defendants filed a *Supplemental Partial Motion to Dismiss*, noting that they invertedly neglected to address Plaintiff's claims against Cruz-Castro because, although she appears in the caption, she is not mentioned at any other point in the *Complaint.* (Docket No. 9).

Plaintiff filed an *Opposition to Motion to Dismiss* (the "*Opposition*") on June 12, 2026. (Docket No. 14). Plaintiff argues that her due process rights were violated because she had a legitimate expectancy of contract renewal, as recognized by First Circuit case law. Id. at 4. While Plaintiff concedes that Puerto Rico Law 100 does not apply to the Municipality and therefore municipal employees in their official capacity, she maintains it can be applied against Defendants in their personal capacity. Id. at 8. Plaintiff contends that she sufficiently pled a political discrimination claim under Section 1983 as well as facts to evince that Defendants acted with "reckless indifference" to her rights, so as to warrant awarding punitive damages. Id. at 9-13. Plaintiff further asserts that because the First Circuit has held that at the early stages of litigation, precise knowledge of the chain of events leading to a constitutional violation may not be available

to a plaintiff, her allegations against individual defendants are sufficient to defeat a motion to dismiss. Id. at 14-16. Lastly, Plaintiff maintains that her claims against Matos should not be dismissed because a private actor can be liable under Section 1983. Id. at 16-21.

Defendants filed a *Reply* on June 18, 2026. (Docket No. 17). Therein, Defendants reiterate that the Court should reject Plaintiff's view that non-renewal after a contract has expired can give rise to a due process claim. Id. at 3. Defendants take issue with Plaintiff's claim that she can assert Law 100 against individual co-defendants in their personal capacity, arguing that Law 100 is aimed at curbing unlawful decisions made by the employer, and thus should not be used to impose liability against coworkers and managers. Id. at 4-6. Defendants argue that Plaintiff failed to acknowledge that municipal governments are immune from punitive damages and could thus only be imposed against individual-capacity defendants. Id. at 6. Defendants further reiterate their position that Plaintiff failed to adequately plead claims against individual codefendants. Id. at 7-8. Lastly, although Defendants agree that private actors can be liable under Section 1983 pursuant to the state action doctrine, they contend that Plaintiff failed to adequately allege the elements of said doctrine. Id. at 9-10.

Plaintiff filed a *Sur-Reply* on June 27, 2026, reiterating her positions. (Docket No. 20).

## II. APPLICABLE LAW

### A. The Motion to Dismiss Standard

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Ruling upon such a motion requires determining whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011). This requires treating non-conclusory factual allegations as true. *See* Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). But, this is unsuitable to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Borras-Borrero v. Corporacion del Fondo del Seguro del Estado, 2020 WL 2097553, at *4 (1st Cir. 2020) (quotation omitted).

### B. 42 U.S.C. § 1983

Section 1983 of the Civil Rights Act provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42

U.S.C. § 1983. In Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), the Supreme Court determined that local governments and municipalities are "persons" under the Civil Rights Act and can therefore be subject to a Section 1983 claim as well.

Crucially, Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979); *see also* Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States."). Relevant to the case at bar, "Section 1983 creates a private right of action for redressing abridgments or deprivations of federally assured rights, such as infringements on a citizen's First Amendment rights." Davila-Torres v. Feliciano-Torres, 924 F. Supp. 2d 359, 367 (D.P.R. 2013) (citing *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**C. Political Discrimination under the First Amendment**

"The First Amendment also prohibits government officials from taking adverse employment action against a non-policymaking government employee based on the employee's political affiliation" Welch v. Ciampa, 542 F.3d 927, 938 (1st Cir. 2008). A prima facie

claim of political discrimination under the First Amendment requires four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 239 (1st Cir. 2010).

## III. DISCUSSION

### A. Due Process Claims

Plaintiff alleges that she had a proprietary right over her employment as well as a reasonable expectation of continued employment and that Defendants summarily dismissed her without cause, adequate notice, or any type of hearing or formal procedure. (Docket No. 2 ¶ 56-57). The Procedural Due Process Clause of the Fourteenth Amendment protects government employees who possess a property interest in their continued public employment. *See* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). Hence, a public employee cannot be deprived of said interest without due process of law. *See* Gonzalez-de Blasini v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004). However, an employee is "**only** entitled to procedural due process if [they] can establish that the government deprived [them] of a constitutionally protected interest." Costa-Urena v. Segarra, 590 F.3d 18, 26 (1st

Cir. 2009) (emphasis added). To establish a successful procedural due process claim, Plaintiffs must show that: (1) they possessed a property interest, and (2) Defendants, acting under color of state law, deprived them of that property interest without a proper constitutional process. *See* Garcia-Diaz, 120 F. Supp. 3d at 80.

To evaluate whether Plaintiff had a property interest, the Court looks to local law and the terms and conditions of the employment arrangement to determine whether there was an expectation that she would retain her employment. *See* Mercado-Ruiz v. Carazo, 2016 WL 1171508, at *6 (D.P.R. 2016). The expectation may "derive from a statute, a contract provision, or an officially sanctioned rule of the workplace." Camacho-Morales v. Caldero, 68 F. Supp. 3d 261, 292 (D.P.R. 2014) (quotation omitted). Yet, Plaintiff "**must show more than an abstract need or desire for it, more than a unilateral expectation of it; instead, they must have a legitimate claim of entitlement to the right.**" Garcia-Diaz, 120 F. Supp. 3d at 80 (emphasis added). If a protected property interest in her position is not shown, then the due process claim must fail. *See* García-González v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014).

Both the First Circuit and the District of Puerto Rico have held that pursuant to Puerto Rico law, transitory employees "do not have a due process interest in their employment beyond the duration of their term or appointment." *See* Caro v. Aponte-Roque,

878 F.2d 1, 4-5 (1st Cir. 1989) (citation omitted); *see also* Garcia-Perales v. Rivera-Schatz, 384 F. Supp. 3d 208, 212 (D.P.R. 2019); García-Matos v. Bhatia-Gautier, 156 F. Supp. 3d 245, 254 (D.P.R. 2016). This "necessarily means that a property interest exists while the appointment is alive, but when that appointment expires there is no retention expectancy regarding that position." Lopez-Rosado v. Molina-Rodriguez, 2012 WL 4681956, at *2 (D.P.R. 2012). Further, where "a transitory employee is discharged at the time his transitory position expires, a mere subjective expectancy that his employment would continue from year to year indefinitely creates no property interest in employment." Jimenez-Gonzalez v. Alvarez-Rubio, No. CIV. 09-1656 MEL, 2011 WL 5854897, at *5 (D.P.R. Nov. 18, 2011) (quotation omitted).[2]

In the case at bar, Plaintiff argues that she had a permanent position within the Head Start Program, pursuant to its own regulations. (Docket No. 2 ¶ 56).[3] The Head Start Act provides that

[2] The Court notes that the opposite is true under a First Amendment claim where "non-policymaking public employees cannot be dismissed because of their political affiliation, regardless of the transitory status of the position." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 n. 3, 98 (1st Cir. 1997); *see also* Jimenez-Gonzalez, 2011 WL 5854897, at *5 ("[T]ransitory employees whose contracts are not renewed due to political discrimination may sue for a violation of their First Amendment rights under section 1983."). Defendants concede that Plaintiff's First Amendment claims cannot be dismissed at this juncture and are thus not discussed in the pending *Motion to Dismiss*. (Docket No. 8).

[3] Martínez points to 45 C.F.R. § 1304.50 (d)(1)(x) and 45 C.F.R. § 1304.52(c) to support this claim. Crucially however, these citations correspond to prior Head Start Program Performance Standards, which were subject to comprehensive overhaul in 2016, and amended again in 2024. *See* Head Start Performance Standards, 81 Fed. Reg. 61,294 (Sept. 6, 2016); Head Start Performance Standards: Tracked Changes, Office of Head Start (2024).

the Governing Body of a Head Start Agency is responsible for "approving personnel policies and procedures, including policies and procedures regarding the hiring, evaluation, compensation, and **termination** of the Executive Director, Head Start Director, Director of Human Resources, Chief Fiscal Officer, and any other person in an equivalent position with the agency[.]" 42 U.S.C. § 9837(c)(1)(E)(iv)(IX). Current Head Start Program Performance Standards Regulations establish certain requirements for directors but are silent as to the hiring, evaluation, and termination of directors. *See, e.g.*, 45 C.F.R. (S) 1302.91 ("A program must ensure a Head Start director hired after November 7, 2016, has, at a minimum, a baccalaureate degree and experience in supervision of staff, fiscal management, and administration.").[4] Additionally, in her *Complaint*, Plaintiff cites to a letter issued by Gliseria Vitale, the Branch Manager for the New Jersey/Caribbean Division of the Office of Family Supportive Services of the HHS dated April 11, 2001, claiming that "Federal Head Start regulations are written to ensure that Head Start personnel positions are permanent." (The "2001 Vitale Letter") (Docket No. 2 ¶ 31).

---

[4] In her *Reply* Plaintiff points to the Humacao Head Start Program's Internal Regulations that allegedly reiterate that the Governing Board is tasked with approving personnel policies and procedures related to the dismissal of the Head Start Director. However, Plaintiff did not provide a certified translation of said internal regulations. *See* (Docket No. 14 at 6-7).

Crucially, neither the text of the Head Start Act nor its regulations indicate that Head Start Director positions are permanent. The fact that the Head Start Act requires the development of a procedure to terminate directors in no way bars Head Start Directors from being hired pursuant to a fixed-term contract nor prohibits the non-renewal of such contracts. The Court also finds that Plaintiff has not established that the 2001 Vitale Letter is capable of creating a right to continued employment. *See, e.g.*, Alvarado Aguilera v. Negron, 509 F.3d 50, 53 (1st Cir. 2007) (quoting Dept. of Natural Res. v. Correa, 18 P.R. Offic. Trans. 795, 801 (1987). ("A simple offer of a permanent position without any action on the part of the government agency clearly showing an agreement to make good on the promise cannot, by itself, give [an employee] anything beyond a unilateral expectation of job retention.")); Ruiz-Roche v. Lausell, 848 F.2d 5, 8 (1st Cir. 1988) (holding that a "naked-and vague-promise" of a permanent position was insufficient under Puerto Rico law to give a plaintiff "a legitimate expectation of continued employment"). Furthermore, Plaintiff failed to allege that (1) the Humacao Governing Body issued an internal policy making the Head Start Director permanent; or (2) Defendants failed to comply with any *specific* internal procedure implemented by the Humacao Governing Body for the non-renewal of her contract as a Head Start Directors. Lastly, this district has held that "even if the contract had been renewed

previously, that renewal 'does not create a property interest in the continued renewal of those contracts.'" Jimenez-Gonzalez, 2011 WL 5854897, at *5 (quotations omitted). A look at the facts alleged in the *Complaint*, even when viewed in the light most favorable to Plaintiff, fail to show that Plaintiff had anything but a mere expectation of continued employment at Humacao Head Start. Accordingly, Plaintiff's procedural due process claims are hereby **DISMISSED WITHOUT PREJUDICE.**

**A. Claims under Article II, Sections 2, 6, and 7 of the Puerto Rico Constitution**

As noted above, Defendants concede that Plaintiff's claims of political discrimination pursuant to Article II, Sections 1 and 4 of the Puerto Rico Constitution need to be adjudicated after the close of discovery. (Docket No. 8 at 6). Nevertheless, Defendants seek dismissal of Plaintiff's remaining Puerto Rico Constitution claims, namely under Article II, Section 2, 6 and 7. Id. at 7-9. Defendants maintain that Sections 2 and 6 are inapplicable to Plaintiff's claims and that Puerto Rico's due process claims under Section 7 fail just as Plaintiff's Federal due process claims. Id. Crucially, Plaintiff does not address these arguments in her *Reply*. *See* United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (quotations omitted) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly,' or else forever hold its

peace.”); L. CV. R. 7(b) (providing that parties that fail to file a timely written objection to a motion shall be deemed to have waived their objection to the motion). Nevertheless, the Court evaluates Defendants’ arguments.

Article II, Section 2, which discusses suffrage and electoral franchise, provides that “[t]he laws shall guarantee the expression of the will of the people by means of equal, direct and secret universal suffrage and shall protect the citizen against any coercion in the exercise of the electoral franchise.” Puerto Rico Const. Art. II, § 2. On its part, Article II, Section 6 governing freedom of organization establishes that “[p]ersons may join with each other and organize freely for any lawful purpose, except in military or quasi-military organizations.” Puerto Rico Const. Art. II, § 6. The Court reviewed the *Complaint* and has not identified *any* well-plead allegations concerning Plaintiff’s voting rights nor her freedom of organization. Accordingly, Plaintiff’s claims under Article II, Sections 2 and 6 of the Puerto Rico Constitution are hereby **DISMISSED WITHOUT PREJUDICE.**

Lastly, Article II, § 7, contains Puerto Rico’s constitutional due process protections. Courts have recognized that “[b]oth the Federal and Puerto Rico Constitutions contain **analogous provisions protecting an individual's right to Due Process of Law**[.]”. Nazario v. Dep't of Health of Commonwealth of Puerto Rico, 415 F. Supp. 2d 48, 48 (D.P.R. 2006) (emphasis added).

Accordingly, because Plaintiff failed to adequately allege a procedural due process claim under the Federal Constitution, her claims pursuant to Article II, Section 7 of the Puerto Rico Constitution are also hereby **DISMISSED WITHOUT PREJUDICE.** *See* Arroyo v. Administracion de Correccion, No. CIV09-1101 MEL, 2010 WL 1006925, at *3, n. 1 (D.P.R. Mar. 15, 2010) ("Because plaintiff has failed to state a due process claim, neither the Fifth or Fourteenth Amendments to the Federal Constitution nor article II, section 7 of the Puerto Rico Constitution article II, section 7 of the Puerto Rico Constitution protect him in this case."); Garcia-Perales, 384 F. Supp. 3d at 213.

**B. Puerto Rico Law Claims**

**1. Public Service Personnel Laws**

Defendants contend that Plaintiff seeks relief under "Puerto Rico's Public Service Personnel laws despite the fact that the Public Personnel Act has not applied to municipal employees since 1991 when the Autonomous Municipalities Act, 21 P.R. Laws Ann. § 4001, et seq. was enacted." (Docket No. 8 at 8). The Court once again highlights that Plaintiff did not address this argument in her *Response*. By failing to identify either: (1) what specific public service personnel law was violated; or (2) what specific conduct violated said law, Plaintiff did not provide "a short and plain statement of the claim showing that [she] is entitled to relief" as required by Fed. R. Civ. P. 8(a)(2). **"A complaint must**

**be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim.**" Gonzalez-Camacho v. Banco Popular de Puerto Rico, 318 F. Supp. 3d 461, 474 (D.P.R. 2018), aff'd in part, dismissed in part, No. 17-1973, 2020 WL 5543934 (1st Cir. July 21, 2020) (quoting Adderly v. Stofko, 646 Fed. Appx. 138, 141 (3rd Cir. 2016)). Furthermore, courts are "not required to sift through a plaintiff's complaint in an attempt to ferret out plaintiff's factual allegations or causes of action that are not properly pled." Arsuaga-Garrido v. Mayorkas, No. CV 18-2031 (MDM), 2022 WL 1268969, at *3 (D.P.R. Apr. 28, 2022) (internal quotations omitted). Accordingly, Plaintiff's claims pursuant to Puerto Rico's Public Service Personnel laws are hereby **DISMISSED WITHOUT PREJUDICE.**

**2. Puerto Rico Law No. 131 of May 13, 1943**

Puerto Rico Law No. 131, known as the Puerto Rico Civil Rights Law, contains the following provisions:

> Subsection 1(a) of Law 131 states that no person shall be denied any access, service, and equal treatment in public places and business, and in the means of transportation because of political, religion, race, color or sex issues, or for any other reason not applicable to all persons in general. P.R. Laws Ann. tit. 1 § 13(a). Subsection (b) makes it illegal to publish, circulate or distribute orders, announcements or advertisements to prohibit, impede or deter patronage or attendance at public places, businesses and means of transportation *because of politics,*

> *religion, race, color or sex.* Id. at § 13(b). Subsection (c) makes it illegal to refuse to grant and option for selling, or to sell, lease or sublease a dwelling to any person *because of politics, religion, race, color or sex.* Id. at § 13(c). Subsection (d) prohibits the publication or circulation of advertisements, notices or any other forms of disclosure, establishing limitations or requirements regarding *political affiliation, religious ideas, race, color or sex*, as a condition for the acquisition of living quarters, or for the granting or loans for the construction of a dwelling. Id. at § 13(d). Subsection (e) provides that no natural or juridical person engaged in the business of granting loans for the construction of dwelling may refuse to render such service to any other person or group of persons for *political, religious, racial color or sexual reasons.* Id. at § 13(e).

Suarez-Torres v. Sandia, LLC, No. CV 16-1882 (PAD), 2017 WL 590307, at *2 (D.P.R. Feb. 14, 2017) (citing P.R. Laws Ann. Tit. 1 § 13). Per the plain text of the statute, it is evident that Law 131 seeks to protect individuals from discrimination in public places and businesses. However, it does not appear to prohibit discrimination in employment. This is further supported by the relevant portion of the statement of motives, which states that Law 131 was enacted to "expressly determine certain fundamental civil rights concerning the enjoyment by all persons in general of the facilities offered by public places and businesses in Puerto Rico." Act May 13, 1943, No. 131, p. 404. Because Plaintiff has not adequately pled that she has suffered from political

discrimination as codified in Law 131, Plaintiff's claims pursuant to said statute are hereby **DISMISSED WITH PREJUDICE.**[5]

**3. Puerto Rico Law 100**

Plaintiff additionally asserts that Defendants violated Puerto Rico Law 100, Puerto Rico's general employment discrimination statute, P.R. Laws Ann. Tit. 29 § 146. In their *Motion to Dismiss*, Defendants assert that Law 100 does not apply to municipalities nor municipal employees and thus Plaintiff's claims under this statute must be dismissed. (Docket No. 8 at 8). "[I]t has long been settled that 'Puerto Rico's Law 100 does not apply to municipalities, or to municipal officials when they are sued in their official capacities.'" Diaz-Zayas v. Municipality of Guaynabo, 600 F. Supp. 3d 184, 203 (D.P.R. 2022)(quoting Rodriguez Sostre v. Municipio de Canovanas, 203 F. Supp. 2d 118, 119 (D.P.R. 2002)).

However, in her *Response*, Plaintiff countered that Law 100 can be applied against Defendants in their personal capacity. (Docket No. 14 ¶ 18). Specifically, Plaintiff points to Torres-Santiago v. Alcaraz-Emmanuelli, 553 F. Supp. 2d 75, 86 (D.P.R. 2008), where the District Court highlighted that the Supreme Court of Puerto Rico has held that Law 100 *does* provide for the

[5] The Court notes that Defendants coupled its discussion of Puerto Rico's Public Personnel Laws and Law 131, seemingly coupling the two as if Law 131 was a public personnel law. However, Plaintiff did not address Defendants' arguments nor did she defend the validity of her claims pursuant to Law 131.

imposition of supervisory liability against defendants in their personal capacity. Crucially, although the defendants in Torres-Santiago were governmental employees, they were not *municipal employees*. Judges in this District have routinely held that "**Law 100 does not apply to individuals employed by entities not covered by the statute**." Sanoguet-Valentín v. Mun. Gov't of Mayagüez, No. CV 14-1182 (PAD), 2017 WL 456462, at *3 (D.P.R. Feb. 2, 2017) (emphasis added); *see also* Huertas-Gonzalez v. Univ. of Puerto Rico, 520 F. Supp. 2d 304, 314-15 (D.P.R. 2007) (dismissing Law 100 claims against individual defendants employed by the University of Puerto Rico because it is not a government entity subject to Law 100). Therefore, "Law 100 does not apply to municipal employees ... in their individual capacity either." Diaz-Zayas, 600 F. Supp. 3d at 203 (quotations omitted). For these reasons, Plaintiff's claims pursuant to Law 100 are hereby **DISMISSED WITH PREJUDICE.**

**C. Punitive Damages**

Defendants request the dismissal of Plaintiff's request for punitive damages. (Docket No. 8 at 9-10). In articulating this request in her *Complaint*, Plaintiff did not specify as to which Defendants she was seeking said damages from. (Docket No. 2 ¶ 67). As a threshold matter, the Court notes that "[a] general request for punitive damages is not a 'claim for relief' within the meaning of Federal Rule of Civil Procedure 8(a)(2), but a request for a

remedy.” D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-CV-747-LM, 2018 WL 6519070, at *6 (D.N.H. Dec. 11, 2018). Consequently, “[p]unitive damages are a form of relief and not a ‘claim’ that is subject to a Rule 12(b)(6) motion to dismiss.” Johnson v. Rapid Sheet Metal, LLC, 560 F. Supp. 3d 623, 630 (D.N.H. 2020) (quotations omitted). Therefore, the Court will not dismiss Plaintiff’s requests for punitive damages at this juncture and Defendants’ request to this effect is hereby **DENIED.**

Nevertheless, the Court reminds Plaintiff that “as a general rule, municipalities are immune from punitive damages judgments when sued under § 1983.” Saldana-Sanchez v. Lopez-Gerena, 256 F.3d 1, 11 (1st Cir. 2001) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)). “Because bringing suit against a governmental official in his or her official capacity is tantamount to bringing ‘suit against the official's office,’ it follows that punitive damages are not available against governmental officials sued in their official capacities.” Powell v. Alexander, 391 F.3d 1, 23 (1st Cir. 2004) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Therefore, Plaintiff may only seek, and potentially be entitled to, punitive damages against Defendants in their personal capacity.

**D. Claims against Certain Members of the Governing Body**

Defendants contend that Plaintiff failed to adequately plead a claim against the following four individual co-defendants, all

of whom are identified in the *Complaint* as members of the Head Start Program Governing Board of the Municipality of Humacao: Nieves-Ruiz; Morales-Concepción; López-Nieves; and Omar-Santiago (the "Governing Body Co-Defendants"). (Docket No. 2 ¶¶ 13, 14, 15, 17).

Defendants correctly assert that in Section 1983 cases, merely occupying a position of authority is insufficient to establish supervisory liability. (Docket No. 8 at 12). Instead, a "supervisor's liability must be premised on his own acts or omissions." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016) (internal quotations and citations omitted).

Here, Plaintiff is not alleging that the Governing Body Co-Defendants have supervisory liability due to the acts of others. Rather, she is asserting that as members of the Governing Body of the Head Start Program of Humacao, these co-defendants were empowered by the Head Start Act to affect and influence decisions regarding Plaintiff's continued employment. *See* 42 U.S.C. § 9837(c)(1)(E)(iv)(IX). Accordingly, the Court finds that dismissal of Plaintiff's claims as to the Governing Body Co-Defendants is premature at this juncture.

The Court notes that Defendants makes the cursory argument that the Head Start Governing board is mandated and governed by federal law and that the position "member of the Head Start governing body ... seems to be a position created under federal

law." Defendants thus maintain that certain Governing Body Co-Defendants, and Matos who will be discussed in the next section, were acting under the color of federal law, rather than state law as required by Section 1983. However, this assertion is underdeveloped and unsupported by case law as required by Local Rule 7(a). Therefore, the Court will not entertain this underdeveloped argument at this juncture and Defendants' request for the dismissal of claims against Nieves-Ruiz, Morales-Concepción, López-Nieves, and Omar-Santiago is hereby **DENIED** at this time.

**E. Claims against Luis Matos**

Defendants also seek the dismissal of Plaintiff's claims against Matos, another individual identified as a member of the Head Start Program Governing Board of the Municipality of Humacao, because he is a municipal contractor and not a state actor, as required by Section 1983. (Docket No. 8 ¶ 10-11). However, a private party may be deemed a state actor if they "assum[e] a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011) (cleaned up). The First Circuit has held that:

> To defeat a motion to dismiss predicated on the 'under color of state law' requirement, a plaintiff need not specifically allege which of these three tests applies in her particular case. Nor must the plaintiff intone some catechism of magic words to describe the relationship between the private party and the state.

Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 544 (1st Cir. 2021) (internal quotation omitted). Rather, "the allegations in the complaint, supplemented with reasonable inferences therefrom and matters susceptible to judicial notice, must comprise a factual predicate sufficient to render it plausible that one of these tests can be satisfied." Id. (citation omitted). In her *Complaint*, Plaintiff alleges that: (1) Matos was in charge of the Head Start transition process; (2) Plaintiff received a call from Matos asking whether the Head Start Program's payroll had been met and represented that he would visit the Program to meet with her; (3) the company POLIMAT LLC, presided by Matos, was contracted to reinforce the human resources of the Head Start Program; (4) Plaintiff was called into a meeting with Matos at the Municipality regarding an extension proposal that needed to be submitted; (5) Matos established a deadline for the proposal. (Docket No. 2 ¶¶ 33, 40, 41, 42, 45). In light of these allegations, the Court finds the *Complaint* contains sufficient factual matter to render it plausible that Matos assumed a traditional public function, namely human resources and employment decisions for the

Head Start Program. Accordingly, Defendant's request to dismiss Plaintiff's claims as to Matos are hereby **DENIED** at this juncture.

**F. Claims against Yojaris Cruz-Castro**

In their *Supplemental Motion*, Defendants note that although Cruz-Castro appears in the caption of the *Complaint* as a codefendant joined "in her personal and official capacity as a member of the Head Start Program Governing Board," she is not mentioned at any point throughout the *Complaint*. (Docket No. 9). The Court's independent review of the *Complaint* confirms as much. Cruz-Castro is not even listed in the "Parties" section of the *Complaint*. (Docket No. 2 ¶¶ 2-21).

Courts have routinely dismissed claims against a defendant in instances where Plaintiff named the defendant in the caption of the complaint but included no allegations pertaining to the defendant in the body of the complaint. *See* Redondo Waste Sys., Inc. v. Lopez-Freytes, 659 F.3d 136, 141 (1st Cir. 2011)(concluding that naming a defendant in the case caption but not mentioning the defendant in the body of the complaint failed the facial plausibility standard); Pandey v. Freedman, 66 F.3d 306 (1st Cir. 1995) (affirming the dismissal of claims against a defendant named in the caption of the complaint because no allegations were made against the defendant in the body of the complaint). Merely identifying her as a member of the Governing Board in the caption

is inherently deficient. Thus, Plaintiff's claims as to Cruz-Castro are **DISMISSED WITHOUT PREJUDICE.**

## IV. CONCLUSION

For reasons set forth above, the Court hereby **GRANTS IN PART and DENIES IN PART** Defendant's *Motion to Dismiss* at Docket No. 8 and **GRANTS** Defendant's *Supplemental Motion* at Docket No. 9. Defendants' requests to dismiss Plaintiff's request for punitive damages as well as Plaintiff's claims against Luis Matos, Rose Nieves-Ruiz, Antonia Morales-Concepción, Edwin López-Nieves, and Izael Omar-Santiago are hereby **DENIED.** Plaintiff's procedural due process claims under the Federal Constitution; claims pursuant to Article II, Sections 2, 6, and 7; claims pursuant to Puerto Rico's Public Service Personnel laws, and claims against Yojaris Cruz-Castro are hereby **DISMISSED WITHOUT PREJUDICE.** Plaintiff's claims pursuant to Puerto Rico Law 131 and Puerto Rico Law 100 are hereby **DISMISSED WITH PREJUDICE.** This action will go forward as to Plaintiff's political discrimination claims under the First Amendment to the United States Constitution.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of October 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge